CITIZENS UTILITY BOARD *et al.*, Petitioners-Appellants, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.—THE CITY OF CHICAGO, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.—THE PEOPLE *ex rel.* JAMES E. RYAN, Attorney General, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.—COMMONWEALTH EDISON COMPANY, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (5th Division) Nos. 1—95—0153, 1—95—0155, 1—95—0156, 1—95—0659 cons.

Opinion filed August 1, 1997, *nunc pro tunc* May 30, 1997.

Sidley & Austin (R. Eden Martin, David Stahl, Dale Thomas, and D.

Cameron Findlay, of counsel), Commonwealth Edison Company (Pamela Strobel and JoAnne Bloom, of counsel), and Phelan, Cahill & Quinlan, Ltd., (William Quinlan, of counsel), all of Chicago, for Commonwealth Edison Company.

James E. Ryan, Attorney General, of Chicago (Janice Dale and Eve Moran, Assistant Attorneys General, of counsel), for the People.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for City of Chicago.

Citizens Utility Board (Wanda Zatopa, of counsel) and Rowland & Moore (Stephen J. Moore, of counsel), both of Chicago, for Citizens Utility Board.

John Kelliger and David McGann, Assistant Attorneys General, of Chicago, for appellee Illinois Commerce Commission.

Jack O'Malley, State's Attorney, of Chicago (Sharon Coleman, Marie Spicuzza, Leijuana Doss, and David Fein, Assistant State's Attorneys, of counsel), for People of Cook County.

Lueders, Robertson & Konzen, of Granite City (Eric Robertson and Edward Fitzhenry, of counsel), for appellee Illinois Industrial Energy Consumers.

John P. Meyer, of Danville, for appellee Board of Trustees of University of Illinois.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

On February 10, 1994, Commonwealth Edison Company (Edison) filed with the Illinois Commerce Commission (Commission) revised tariff schedules, proposing an increase in annual revenues "by about 7.9%." Edison also filed exhibits and testimony in support of the rate increase. The Commission thereafter twice suspended, until January 9, 1995, Edison's filed tariffs.

During these proceedings, appearances or petitions to intervene were filed by the staff of the Commission (Staff), the State of Illinois by the Attorney General (AG), the City of Chicago (City), the board of trustees of the University of Illinois, Birmingham Steel Corporation, Business and Professional People for the Public Interest, Citizens Utility Board (CUB), the Labor Coalition on Public Utilities, the People of Cook County by the Cook County State's Attorney (SA), the United States Department of Energy, the Chicago Area Industrial

Customer Coalition, the Illinois Industrial Energy Consumers (IIEC), and an individual, Ralph M. Schultz. The Commission held evidentiary hearings from August 16 through September 2, 1994. Public hearings were also held, following proper notice, in various locations throughout Illinois. The Commission thereafter issued a proposed order and the parties filed exceptions and replies to exceptions. Following oral argument, the Commission issued its final order on January 9, 1995, granting Edison a $303.2 million increase in electric rates. The Commission also found that Edison's nuclear generating plants (Byron 2, Braidwood 1 and 2) are "used and useful," thereby allowing Edison to include the costs of those plants in its rate base.

CUB, the SA, the City, the AG and Edison filed petitions for review, which were consolidated by this court. CUB and the SA sought a stay of the Commission's order, which this court denied based on Edison's commitment that in the event the Commission's rate order is reversed, Edison "will refund to its customers any amounts collected pursuant" to the Commission's order. CUB, the City and the AG (collectively, intervenors) appeal the Commission's order, raising several issues. Edison also appeals, contesting the Commission's denial of Edison's requests for the recovery of flotation costs associated with stock issuance and the Commission's disallowance of charitable contributions in excess of $2 million.

We need only address two of the issues presented by the intervenors as we find the Commission's order proper in all other respects. Additionally, we reject Edison's contentions on appeal as being without merit.

■ The Public Utilities Act (Act) (220 ILCS 5/1—101 *et seq.* (West 1994)) provides, in part, as follows:

> "The findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; rules, regulations, orders or decisions of the Commission shall be held to be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be upon the person or corporation appealing from such rules, regulations, orders or decisions." 220 ILCS 5/10—201(d) (West 1994).

Section 10—201(e)(iii) of the Act provides:

> "If the court determines that the Commission's rule, regulation, order or decision does not contain findings or analysis sufficient to allow an informed judicial review thereof, the court shall remand the rule, regulation, order or decision, in whole or in part, with instructions to the Commission to make the necessary findings or analysis." 220 ILCS 5/10—201(e)(iii) (West 1994).

Section 9—201(c) of the Act provides that "the Commission shall es-

tablish the rates or other charges *** which it shall find to be just and reasonable." 220 ILCS 5/9—201(c) (West 1994). "[T]he burden of proof to establish the justness and reasonableness of the proposed rates or other charges *** shall be upon the utility." 220 ILCS 5/9—201(c) (West 1994).

The Commission's findings will be reversed only if they "are not supported by substantial evidence based on the record; the Commission acted outside the scope of its statutory authority; the Commission issued findings in violation of the State or Federal Constitution or law; or the proceedings or the manner in which the Commission reached its findings violates the State or Federal Constitution or laws, to the prejudice of the appellant." *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d 111, 120-21, 651 N.E.2d 1089 (1995), citing 220 ILCS 5/10—201(e)(iv)(A) through (e)(iv)(D) (West 1992); *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 643 N.E.2d 719 (1994). "Substantial evidence consists of more than a mere scintilla but may be something less than a preponderance of evidence and is such evidence as a reasoning mind would accept as sufficient to support a particular conclusion." *People ex rel. O'Malley v. Illinois Commerce Comm'n*, 239 Ill. App. 3d 368, 376, 606 N.E.2d 1283 (1993), citing *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 203 Ill. App. 3d 424, 433, 561 N.E.2d 426 (1990); *Metro Utility v. Illinois Commerce Comm'n*, 193 Ill. App. 3d 178, 184, 549 N.E.2d 1327 (1990). This court can neither reevaluate the credibility or weight of the evidence nor substitute its judgment for the Commission's. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 283 Ill. App. 3d 188, 200-01, 669 N.E.2d 919 (1996).

The Commission's interpretation of statutory standards is entitled to deference, but this court is not bound by the Commission's interpretation of law. *Citizens Utility Board*, 166 Ill. 2d at 121. Decisions of the Commission are not *res judicata*. *Peoples Gas, Light & Coke Co. v. Illinois Commerce Comm'n*, 175 Ill. App. 3d 39, 51, 529 N.E.2d 671 (1988). Though the Act grants the Commission discretion, the Commission's decisions are entitled to less deference when the Commission drastically departs from past practice. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 228, 555 N.E.2d 693 (1989). Because the Act obliges the Commission to provide "findings or analysis sufficient to allow an informed judicial review" (220 ILCS 5/10—201(e)(iii) (West 1994)), the Commission must set forth more reasoning and analysis than would be acceptable from a circuit court. See generally *Citizens Utility Board*, 166 Ill. 2d at 120-26. "The Commission, however, is not

required to make particular findings as to each evidentiary fact or claim." *Lefton Iron & Metal Co. v. Illinois Commerce Comm'n*, 174 Ill. App. 3d 1049, 1055, 529 N.E.2d 610 (1988), citing *United Cities Gas Co. v. Illinois Commerce Comm'n*, 47 Ill. 2d 498, 265 N.E.2d 608 (1970).

## I

The City contends the Commission improperly failed to distinguish between the marginal cost of adding a new customer who requires new facilities and the marginal cost of serving all other new and existing customers. Edison counters that the City does not challenge the correctness of the Commission's rate increase, but contests the Commission's revenue allocation, a decision which requires the Commission's expertise. IIEC contends the City's position prohibits the inclusion into the customer component of the costs associated with serving that customer. The Commission maintains that a distinction between new and existing customers would result in a distortion of the results of the marginal cost study.

The Commission recognized testimonial evidence that Edison's study does not reflect the costs of serving new as opposed to existing customers. IIEC witness Maurice Brubaker testified, however, that Edison's study did not account for the distinction between new and existing customers because such a distinction is "artificial and inappropriate in the marginal cost sense. The purpose of the marginal study is to develop the cost associated with serving additional load. This cannot be accomplished if the cost of facilities required to serve a substantial proportion of the load is ignored." Edison witness Dennis Kelter testified that the "carrying charges associated with additional investment *** and costs associated with meter reading, billing and customer service are incurred by [Edison] to serve that additional customer. The mere existence of additional customers on Edison's system causes [Edison] to incur these costs." On the other hand, Staff witness Peter Lazare testified that, based on Edison's numbers, "approximately [.03%] of existing customers will require replacement meters and [.05%] of existing customers will require replacement services in a given year." The Commission concluded that it was

> "aware of the principle [*sic*] criticism of [Edison's marginal cost] study, that Edison has failed to distinguish between marginal customer costs and marginal [transmission and distribution] costs imposed by existing customers as opposed to new customers, but concludes that such a distinction in this proceeding could produce distortions in other areas of the marginal cost studies." ICC Docket No. 94—0065.

The Commission, unlike a circuit court, must provide "findings or

analysis sufficient to allow an informed judicial review." 220 ILCS 5/10—201(e)(iii) (West 1994); see generally *Citizens Utility Board*, 166 Ill. 2d at 120-26. Though the evidence may be substantial enough to support the Commission's findings, the Commission's order is lacking in sufficient analysis here: specifically, the Commission stated that "distortions" "could" occur in other areas without explaining what distortions could occur. See 220 ILCS 5/10—201(e)(iii) (West 1994). The Commission's succinct statement leaves this court attempting to discover why "such a distinction" could create a distortion, what type of "distortions" could occur, and in what areas these "distortions" could occur. This court, however, cannot provide the analysis for the Commission's order. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 283 Ill. App. 3d 188, 200-01, 669 N.E.2d 919 (1996). The Commission and Edison submit that Brubaker's testimony supports the Commission's finding; however, Brubaker's testimony was not mentioned by the Commission in its findings. The Commission lastly relies upon reasoning from an earlier order to support its finding; yet, the order here contains no similar reasoning or analysis.

■ Edison asserts the Commission was properly concerned "with applying a marginal cost approach to certain cost elements but an inconsistent approach to customer costs." The Commission's order reveals no such concern and Edison's attempt to provide reasoning for the Commission's ruling demonstrates the absence of any reasoning in the Commission's order. Accordingly, the Commission's order "does not contain findings or analysis sufficient to allow an informed judicial review" (220 ILCS 5/10—201(e)(iii) (West 1994)), and the Commission's order concerning the marginal costs of new customers is remanded to the Commission for further analysis as to how "such a distinction in this proceeding could produce distortions in other areas of the marginal cost studies."[1]

## II

The AG contests the Commission's finding that Edison's cost of equity was 12.28%.

---

[1]CUB also notes the Commission's failure to distinguish between new and existing customers, but raises this argument in connection with its contention that the Commission used an inappropriate methodology and asserts that the Commission's revenue allocation is contrary to law and the evidence. We find no error in the Commission's methodology nor do we find that the Commission's revenue allocation was contrary to law and the evidence; rather, we find the order is lacking in sufficient analysis regarding the distinction between new and existing customers.

## A

The AG contends the Commission entered findings rejecting the testimony of AG/City witness Richard LeLash, IIEC witness Michael Gorman and United States Department of Energy witness Matthew Kahal (collectively, intervenor witnesses) that were incomplete, erroneous and unsupported by reasoning or analysis. Edison and the Commission assert a utility's rate of return is an issue particularly within the Commission's expertise and the Commission's finding that Edison should earn an overall rate of 9.87%, which incorporated a 12.28% return on common equity capital, was a substantial decrease from the Commission's 1993 remand order, notwithstanding evidence that supported an increase in the rate of return.

The Commission here rejected the recommendations of Edison's witnesses as well as the intervenor witnesses, noting that the intervenor witnesses' presentations:

> "lead to determinations which underestimate Edison's cost of equity; [*e.g.*], use by all three Intervenor witnesses of an annual DCF [(discounted cash flow)] model, which has been explicitly rejected by this Commission ([see] *Northern Illinois Gas Co.*, Docket 87—0032 at 36 (Jan. 20, 1988); *Commonwealth Edison Co.*, Dockets 83—0537 [*et al.*] at 34 (Oct. 24, 1985)); *** *GTE* at 63, 66; use of untimely data, in their DCF studies; use by the Intervenor witnesses of growth rates calculated on the basis of a retention ratio method *** previously rejected as unsound by the Commission in the GTE Order at 65; use by Mr. Gorman of invalid unadjusted (raw) betas in his CAPM [(capital asset pricing model)] analysis; and failure of all three to recognize the greater risks facing Edison as compared to their various 'sample' groups of companies." ICC Docket No. 94—0065.

## 1

■ The AG initially asserts the Commission's findings on annual DCF methodology and retention ratio are insufficient because those findings, which are based on past agency decisions, require this court to make a *de novo* review of the evidence. Edison counters that the Commission can rely on principles adopted in prior decisions and the Commission errs if it departs arbitrarily or capriciously from its past practices and principles, relying upon *City of Chicago v. Illinois Commerce Comm'n*, 133 Ill. App. 3d 435, 440, 478 N.E.2d 1369 (1985). As stated in *City of Chicago*, the decisions of the Commission are not *res judicata*, but the Commission has the power to deal with each situation before it regardless of how it may have dealt previously with a similar or the same situation. 133 Ill. App. 3d at 440.

The Commission's order detailed the testimony of all witnesses

on these issues and concluded that Staff witness Alan Pregozen's presentation was the most reasonable recommendation because he "used theoretically correct models and implemented them honestly and carefully." ICC Docket No. 94—0065. Pregozen also balanced the interest of ratepayers and shareholders. The Commission recapped Pregozen's testimony by stating that his DCF model "precisely reflects the timing of each dividend payment" and "assumes [that] companies will increase dividends once each year at a constant rate." ICC Docket No. 94—0065. The AG relies upon the Commission's stated rejection of the intervenor witnesses' testimony for following practices previously dismissed by the Commission. The Commission found, however, that the intervenor witnesses underestimated the cost of common equity. This finding was supported by several reasons, including the intervenor witnesses' use of an annual DCF model, which the Commission explicitly rejected in previous cases, rather than a DCF model that reflects the timing of each dividend payment. The Commission's findings are considered *prima facie* true and the AG bears the burden of proof on appeal. 220 ILCS 5/10—201(d) (West 1994).

The findings of the Commission here are supported by substantial evidence, and the Commission's findings and analysis are sufficient to allow an informed judicial review. 220 ILCS 5/10—201(e)(iii) (West 1994). Accordingly, we affirm the Commission's findings on DCF methodology and retention ratio.

### 2

■ The AG next maintains that the Commission's findings on risk factors affecting Edison's cost of equity erroneously disregard evidence showing that risk was considered. The Commission rejected the intervenor witnesses' determinations, in part, because they used "untimely data." The AG also asserts this finding is vague, unsupported by record evidence, and arbitrary.

Here, the Commission rejected the intervenor witnesses' presentation, in part, because "all three [failed] to recognize the greater risks facing Edison as compared to their various 'sample' groups of companies." ICC Docket No. 94—0065. The Commission's order does not explain what "greater risks" are facing Edison or how the three witnesses' presentations failed to account for those greater risks. Nor does the Commission explain the nature of the "untimely data." The Commission's findings here contain no reference to the evidence adduced, and its argument on appeal, therefore, cannot provide evidentiary support. The Act obliges the Commission to provide "findings or analysis sufficient to allow an informed judicial review." 220 ILCS

5/10—201(e)(iii) (West 1994). As previously noted, the Commission must supply more reasoning and analysis than would be acceptable from a circuit court. See generally *Citizens Utility Board,* 166 Ill. 2d at 120-26; 220 ILCS 5/10—201(e)(iii) (West 1994). The Commission, as the fact-finding body, must render findings on these issues; failure to do so, as here, leaves this court without an informed basis for judicial review. See 220 ILCS 5/10—201(e)(iii) (West 1994); *Brinker Trucking Co. v. Illinois Commerce Comm'n,* 19 Ill. 2d 354, 166 N.E.2d 18 (1960). A remand is necessary so that the Commission can provide the appropriate evidentiary basis and reasoning for its findings that the intervenor witnesses used untimely data and failed to recognize the greater risks facing Edison.

## B

■ The AG next asserts the Commission rested its decision adopting Staff's recommendation on a finding unsupported by any record evidence.

The Commission summarized Pregozen's testimony, in part, as follows:

> "[H]e averaged the DCF cost of equity estimates for Edison with those for the comparable sample. Averaging these estimates increases the measured cost of equity by 54 basis points, to 11.85%, in relation to the comparable sample estimate of 11.31%. He also added 54 basis points to the risk premium estimates for the comparable sample because [Edison's] true beta probably exceeds the estimated beta for both it and the comparable sample. ***
>
> In summary, the DCF estimates form the low end of the range Mr. Pregozen estimated for [Edison's] required [return on equity], while the risk premium estimates, with 54 basis points added to reflect the difference in risk between Edison and the comparable sample and an apparent downward bias in [Edison's] estimated beta, form the high end."

Pregozen estimated the cost of equity for Edison using three models: constant-growth DCF, non-constant-growth DCF, and risk premium analysis. Edison and the Commission again attempt to provide the evidentiary basis for the Commission's finding that Pregozen equally weighed the DCF and risk premium-based results; however, this analysis should have been provided by the Commission. The Act obliges the Commission to provide "findings or analysis sufficient to allow an informed judicial review." 220 ILCS 5/10—201(e)(iii) (West 1994). Although Pregozen did not explicitly state he equally weighed the various factors, this does not mean he did not in fact do so. The Commission's order, however, fails to explain fully how Pregozen's approach equally weighed the DCF and risk premium-based results or how he

arrived at the sum of 54 basis points. Accordingly, the Commission's finding must be remanded for further analysis. 220 ILCS 5/10—201(e)(iii) (West 1994).

## C

The AG next maintains that the Commission's conclusions on Edison's rate of return are contrary to the manifest weight of the evidence. The AG notes that six different witnesses testified concerning cost of equity, three of whom reached the same conclusion on Edison's cost of equity and another, Pregozen, a Staff witness, reached a similar conclusion.

Pregozen's constant-growth DCF model "produced a cost of equity range of 10.93% to 11.35% *for the comparable sample* and 12.68% to 12.84% *for Edison.*" (Emphasis added.) ICC Docket No. 94—0065. Pregozen's testimony, therefore, does not support the AG's argument. The mere fact that the intervenor witnesses outnumbered Staff witness Pregozen does not, *a fortiori*, require the Commission to follow their recommendations; rather, the credibility of expert witnesses and the weight to be given their testimony are matters for the Commission as the fact finder. See *Lefton Iron & Metal Co. v. Illinois Commerce Comm'n*, 174 Ill. App. 3d 1049, 529 N.E.2d 610 (1988). We cannot say the Commission's decision is against the manifest weight of the evidence; nevertheless, we believe remand is appropriate here in light of the Commission's need to provide further analysis regarding risk factors, untimely data, Pregozen's equal weighing of the DCF and risk premium-based results, how Pregozen arrived at the sum of 54 basis points, and whether his addition of 54 basis points was proper. After reanalyzing those bases, the Commission can determine whether or not Pregozen's cost of equity presentation should still be followed.

For the foregoing reasons, the findings of the Commission concerning: (1) the distortions created by recognizing a distinction between new and existing customers; (2) risk factors and untimely data; and (3) Pregozen's equal weighing of the DCF and risk premium-based results, and his conclusion that 54 basis points should be added to the comparable sample, are remanded to the Commission so that it can provide further analysis. The Commission's order is affirmed in all other respects.

Affirmed in part; remanded in part.

HOFFMAN and SOUTH, JJ., concur.