HUNTLEY FIRE PROTECTION DISTRICT, Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. HUNTLEY DEVELOPMENT LIMITED PARTNERSHIP, Defendant and Counterplaintiff-Appellant and Cross-Appellee.

Second District    No. 2—01—1458

Opinion filed April 9, 2003.

Theodore L. Kuzniar, of Bochte & Kuzniar, P.C., of St. Charles, and Donald J. Kreger and Ruth E. Krugly, both of Schiff, Hardin & Waite, of Chicago, for appellant.

James G. Militello III, of Militello, Zanck & Coen, P.C., of Crystal Lake, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant and counterplaintiff, Huntley Development Limited Partnership (HDLP), appeals from the order of the trial court allowing plaintiff and counterdefendant, Huntley Fire Protection District (District), to retain possession of the parcel of property at 12605 Route 47 in Huntley, Illinois. The District cross-appeals from the portion of the same order that prohibits the District from unrestricted sale of the property. We affirm the court's order in both appeals.

On March 31, 1998, HDLP and the District entered into an agreement whereby HDLP agreed to donate the parcel of land located at 12605 Route 47 to the District, which then agreed to use the property "only for fire station purposes and uses necessarily incident thereto." The parties also contemporaneously entered into an assignment and assumption of a lease whereby the District assumed responsibility for the lease of a house located on the property. A quitclaim deed transferring title of the property to the District and a copy of the March 31 agreement were recorded simultaneously on December 17, 1998.

The District hired architects to study the feasibility of using the property for a fire station. The existence of an easement in favor of HDLP on the property made the building of a fire station infeasible. In June 1999, HDLP learned that the District desired to sell or trade the property. HDLP notified the District of its objection to any sale or trade of the property and declined to amend the agreement to allow, in addition to fire station uses and those necessarily incident to them, "other uses which the Huntley Fire Protection District deems necessary to promote the Huntley Fire Protection District."

On June 7, 2000, the District filed a complaint for declaratory judgment, requesting the court to:

"A. Determine whether the sale or trade of the property by the District and the use of the proceeds or consideration from the sale or trade by the District to purchase or exchange property and/or construct a fire station is a use 'necessarily incident thereto' under the terms of the agreement; and

B. Determine whether the restrictive covenant can be enforced against the District or any other purchaser of the property."

HDLP filed a counterclaim, seeking a declaration that, since the District alleged that the property was not suitable for purposes of a fire station, the District must deed the property back to HDLP. After a bench trial, which included the testimony of two witnesses and a joint stipulated statement of undisputed facts, the court declared that the use of the subject property was "restricted to fire station purposes and uses necessarily incident thereto." The court further declared that, while construction of a fire station was not required by the agreement,

"unrestricted sale of the property is not permitted thereunder." This appeal and cross-appeal followed.

■ We will first address the District's motion to strike exhibit A of HDLP's reply brief. Exhibit A included copies of a District resolution, a vacant land sales contract, and a warranty deed, none of which were contained in the record. Attachments to briefs that are not contained in the record are not properly before a reviewing court and cannot be used to supplement the record. *Carroll v. Faust*, 311 Ill. App. 3d 679, 683 (2000). As the documents contained in the exhibit are not part of the record, we grant the District's motion to strike.

■ HDLP first contends that the trial court erred in not ordering the District to reconvey the property. The construction of a contract and the determination of the rights and obligations of the parties pursuant to the contract are questions of law. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 332 Ill. App. 3d 1038, 1051 (2002).

The trial court concluded that the agreement "unambiguously" stated that the property was to be used only for fire station purposes and uses incident thereto and that this was an enforceable restriction on the use of the property. In addition, neither the agreement nor the deed contained any language providing for a reverter. HDLP does not argue that this construction of the agreement and the deed is wrong as a matter of law. Instead, HDLP argues that, even in the absence of language regarding reversion of the property, the court should have ordered the reconveyance of the property to HDLP. We disagree.

HDLP relies on *Trustees of Schools Town 16 N., R. 11 W., in Morgan County v. Braner*, 71 Ill. 546 (1874), for its argument. In *Braner*, property was conveyed to the trustees of the school district. Although the actual language of the conveyance is not quoted, we are told that the deed specified that the property was to be used "for school purposes." *Braner*, 71 Ill. at 546. The deed did *not* provide that the property would revert to the original owner if the land was used for any purpose other than a "legitimate school purpose." *Braner*, 71 Ill. at 547. The schoolhouse that was located on the property was eventually moved, and the trustees advertised the property for sale. The conveyor of the property brought suit, requesting that the sale be enjoined and the property be reconveyed to him. The trustees failed to file an answer after their demurrer was overruled, and the trial court, taking the bill as confessed, granted the relief sought by the plaintiff. *Braner*, 71 Ill. at 547.

Our supreme court reversed. According to the court, the deed allowed for many uses of the property under the restriction of school purposes, including rental of the property and subsequent usage of the rental proceeds for school purposes. However, sale of the property,

with subsequent usage of the funds for school purposes, was not allowable, as use of the property would then be "perverted" to another use. *Braner*, 71 Ill. at 547-48. The court found that the trustees admitted that they intended to sell the property. However, the court held:

"[U]ntil the officers attempt to pervert [the property] to other than school purposes, or until they abandon the property, defendant has no right to become reinvested with the title." *Braner*, 71 Ill. at 547.

The supreme court concluded that the trial court erred in decreeing the reconveyance of the property and reversed the trial court's decree. *Braner*, 71 Ill. at 548.

We conclude that, far from demonstrating the error of the trial court in this case, *Braner* supports the trial court's construction of the agreement and deed. Just as the property in *Braner* could be used for something other than a schoolhouse, the property in this case can be used for something other than a firehouse. The agreement clearly allows for "uses necessarily incident" to fire station purposes. We need not list herein what uses are "necessarily incident" to fire station purposes. However, *Braner* does not hold that donated property shall revert to the donor if the donee even considers a perverted use of the property; an actual attempt at perversion of use or abandonment of the property must be proved. *Braner*, 71 Ill. at 547. While *Braner* does allow for the reversion of property even in the absence of a reversion clause in an agreement or deed, it does *not* authorize automatic reversion upon the donor's request.

HDLP then contends that the trial court erred in finding that there was not an "imminent attempt" by the District to pervert the use of the property "to other than for fire station purposes" or to abandon the property. In reviewing a bench trial, we defer to the trial court's findings of fact unless they are against the manifest weight of the evidence. *Lowe Excavating Co. v. International Union of Operating Engineers Local No. 150*, 327 Ill. App. 3d 711, 720 (2002). We will not substitute our judgment for that of the trial court regarding conflicts in testimony and the credibility of witnesses. *Lowe Excavating Co.*, 327 Ill. App. 3d at 720.

Jeff Homuth testified that he had been a District trustee for 10 years and a firefighter/paramedic for 14 years. In 1992, HDLP offered the District a piece of property on Freeman Road, approximately one quarter of a mile from the subject property. However, the property had to be replatted, and the land was never conveyed to the District. HDLP eventually approached the District about donating the subject property. The District approved the agreement with HDLP in May 1998, but the agreement was not recorded until December 17, 1998. The District was not aware of an easement on the property in favor of

HDLP until after the deed was recorded. At the time of the deed, the property contained a single-family home that was on a month-to-month lease to a family. After the deed was recorded, the District hired an architectural firm to determine the feasibility of building on the subject property. The District determined that it could not build on the property because of the easement in favor of HDLP, so it purchased property approximately a quarter mile away and built a fire station on the purchased property. According to Homuth, the District had not abandoned the subject property. Homuth described the subject property as "a vacant piece of property that we may use for a storage facility or other training facility." The District had three fire stations, and the District began building the second and third stations in August 2000.

HDLP presented the testimony of Bohdan Hirniak, a civil engineer employed by HDLP. In early 1998, he had discussions with District personnel regarding the subject property. He told Maynard Williams, who was then the president of the District, that the subject property was available for donation to the District and asked if the District would prefer the subject property to the property on Freeman Road that had originally been offered. The District wanted the subject property. HDLP wanted a fire station on the subject property. Hirniak stated that the "underlying premise" of the contribution of the property was that it be used for "fire station purposes" and that Maynard understood that premise. Prior to the execution of the agreement, no one from the District indicated that there could be a necessity to sell or otherwise exchange the property; if someone had made such an indication, HDLP "would not have given them the property."

Included in the joint stipulated statement of undisputed facts are copies of letters sent between the parties' attorneys, including a letter dated June 25, 1999, that referenced "published reports" that the District was considering a sale or trade of the subject property.

■ We cannot conclude that the trial court's finding that there was no imminent attempt to sell or abandon the property was against the manifest weight of the evidence. The District, in its complaint, stated that it was "desirous of selling or trading" the property and that it thought that such a sale or trade "would constitute a use 'necessarily incident' to fire station purposes." The letter of June 25, 1999, referenced noncited "published reports" that the District was considering a sale or trade of the property. However, these pleadings and this evidence are a far cry from evidence of an imminent intent to sell, trade, or abandon the property. Indeed, the only evidence regarding the status of the property came from Homuth, who described the property as "a vacant piece of property *that we may use for a storage*

*facility or other training facility."* (Emphasis added.) This is evidence that the District had options for the use of the property that did not entail abandonment or perversion of use. While the District may have desired to sell or trade the property and sought a declaration from the court that such a disposition would be allowed, there is no evidence that any attempt at perversion of use was imminent or that the District had abandoned the property. Therefore, we conclude that the trial court did not err in finding no imminent attempt to abandon the property or to pervert its use.

■ In its cross-appeal, the District contends that the trial court should have allowed the District to sell or transfer the property without limitation. According to the District, HDLP acted in bad faith by reserving an easement for itself on the subject property after the District had agreed to the conveyance of the property and without the District's knowledge; this easement made the building of a fire station on the property infeasible. Because the District could not build the desired fire station on the subject property, the District was forced to buy a nearby parcel of property for $160,000 and build a fire station there. Thus, the court should have exercised its discretion to declare that any use restriction contained in the agreement was unenforceable against a subsequent owner so that the District could sell the subject property to help defray the costs of the purchase of the other property. We disagree.

The intent of the parties to a contract is not a matter of judicial discretion. Having determined, from the unambiguous language of the agreement, that the parties intended that the property be used for fire station purposes or uses necessarily incident thereto, the court did not have discretion to nullify that intent. Furthermore, the District is not entitled to a windfall in this case, even if the property was rendered unsuitable for a fire station by HDLP's easement. If HDLP had not donated the property, the District would have had to purchase property upon which to build a fire station. The District has its fire station, and it still has the subject property to use for some purpose necessarily incident to a fire station. The District makes no valid argument and cites no case law that would allow it to violate the terms of the agreement. If the District no longer wants the property, it can give the land back to HDLP and be in a position no worse than if the property had never been conveyed in the first place. We find no error here.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

HUTCHINSON, P.J., and CALLUM, J., concur.