[No. D054136. Fourth Dist., Div. One. Nov. 9, 2009.]

TAMMY KING, Plaintiff and Appellant, v.
BARBARA JOHNSTON, Defendant and Respondent.

COUNSEL

Glenn, Wright, Jacobs & Schell and Ralph E. Hughes for Plaintiff and Appellant.

Law Offices of William F. Roche and William F. Roche for Defendant and Respondent.

OPINION

**AARON, J.—**

I.

INTRODUCTION

Plaintiff Tammy King appeals from a judgment entered in favor of defendant Barbara Johnston. Tammy,[1] a beneficiary of the Arthur L. Gilbert Testamentary Trust, sued Barbara in a civil action, alleging that Barbara had unduly influenced the trustee, Lenora Gilbert, to breach the trust.[2] According to Tammy, Barbara induced Lenora to transfer a piece of trust property to herself, without consideration, after which Barbara induced Lenora to mortgage the property for a personal loan. The bank eventually foreclosed on the property, and Lenora lost title. Tammy also alleged that Barbara took money and rents that belonged to the trust and used them for her own personal benefit.

Tammy asserted, in the alternative, that Barbara had essentially taken over the role of trustee while Lenora was still alive but in failing mental and physical health, and that Barbara's actions during this period of time constituted a breach of trust. Tammy further alleged that after Lenora's death, Barbara acted as trustee and thus became a trustee *de son tort*,[3] and that Barbara breached her duties as trustee during that period of time by failing to properly care for and/or recover trust property.

After a bench trial, the trial court determined that Tammy should recover nothing from Barbara. Specifically, the trial court concluded that Tammy had

---

[1] Throughout the record the parties refer to the various family members involved in this case by their first names. We adopt the same practice for clarity.

[2] Barbara is Lenora's daughter and the stepdaughter of Arthur Gilbert.

[3] A trustee *de son tort* is one "who is treated as a trustee because of his wrongdoing with respect to property . . . over which he exercised authority which he lacked." (Black's Law Dict. (5th ed. 1979) p. 1357, col. 2.)

failed to establish the existence of a conspiracy between Lenora and Barbara, that Tammy had not established that Barbara was a de facto trustee before Lenora died, and that Tammy, as a trust beneficiary, did not have standing to sue Barbara without joining the current trustee, Lloyd Gilbert, in the action.

The trial court also concluded that Barbara had unduly influenced Lenora to breach the trust, and that Barbara had "acted as trustee" after Lenora's death, before Lloyd accepted his role as trustee. Despite these findings, the court determined that because Tammy lacked standing to sue Barbara for Barbara's role as a third party participant in Lenora's breach, Tammy could not recover under that theory. The court also declined to award Tammy any relief as to her claim that Barbara had acted as trustee after Lenora's death, because, the court noted, Lloyd was "actively recouping" the value of the trust rental income that Barbara had wrongfully retained by withholding her share of the trust distributions.[4]

On appeal, Tammy contends that the trial court erred in denying her relief in the form of the value of the trust property that Lenora transferred out of the trust and lost after defaulting on her loan. Specifically, Tammy asserts that the court erred in concluding that she did not have standing to sue Barbara for Barbara's role as a third party participant in Lenora's breach of trust. Tammy also contends that the trial court erred in failing to grant relief to make the trust whole by rejecting Tammy's argument that Barbara acted as a trustee *de son tort* during Lenora's tenure as trustee. Tammy further contends that the trial court erred in failing to make a determination as to whether Barbara became a trustee *de son tort* by acting as trustee after Lenora's death. If Barbara were found to have been a trustee *de son tort*, she may have been obligated to fulfill the same duties a trustee would be required to fulfill, including protecting and restoring trust property.

We conclude that the trial court erred in determining that Tammy did not have standing to sue Barbara for Barbara's role as a third party participant in a trustee's breach. We also conclude that the court erred in failing to consider and make the necessary findings as to whether Tammy could recover from Barbara under a theory that after Lenora's death, Barbara became a trustee *de son tort*, and thus had duties to the trust beneficiaries, which she breached. We therefore reverse the judgment and remand the case.

---

[4] As we explain in part II.A., *post*, Barbara was also a beneficiary of the trust.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*

Upon Arthur Gilbert's death in 1991, his widow Lenora became the trustee of the Arthur L. Gilbert Testamentary Trust. Upon Lenora's death, the trust estate was to be distributed as follows: (a) 15 percent to Tammy and 15 percent to Tammy's sister, Brenda Leifheit (representing an even split of the 30 percent that would have gone to their deceased father, one of Arthur's sons); (b) 30 percent to Lloyd, Arthur's other son; (c) 30 percent to Barbara, Arthur's stepdaughter; and (d) 10 percent to the Church of Christ.[5]

During the distribution of Arthur's estate, Lenora, as trustee, received title to two parcels of land, "Parcel 21" and "Parcel 17," which are adjacent to each other. Mark Osterkamp rented both parcels for farming.

Lenora personally received title to two other parcels of land, the Gilbert residence, and a property identified as "Parcel 6." Parcel 6 sits directly west of Parcel 21 and directly north of Parcel 17. Osterkamp also rented Parcel 6 from the Gilbert family.

Arthur's probate closed in 1993.

In December 1995, Lenora suffered a seizure and spent approximately two weeks in the hospital. In January 1996, Lenora told her niece by marriage that she had been sick and that Barbara was taking care of her finances.

In the summer of 1997, Lenora was living at a residence that she owned on Dahlia Lane in Imperial, California. Barbara lived approximately seven and a half or eight miles from Lenora, on James Road. That summer, Lenora transferred Parcel 17 out of the trust without consideration, and used Parcel 17 and the Dahlia Lane property as security for a personal loan from Ford Consumer Finance. The escrow officers who handled the transaction stated that a woman who identified herself as Barbara Johnston had directed that any mail concerning the transaction be sent to Barbara's James Road address.

Lenora's physical and mental health continued to decline. After Lenora was diagnosed with dementia, Barbara opened a joint savings account with Lenora. Osterkamp's rent checks were deposited into this account. Over a

---

[5] Before trial, Tammy acquired the beneficial interests of both Brenda and the Church of Christ. Tammy is thus currently entitled to a 40 percent share of the trust estate.

number of months, thousands of dollars in rental income belonging to the trust was withdrawn from the joint account. During this time, Lenora could not drive and had difficulty walking.

Around March of 2000, Barbara began endorsing Osterkamp's rent checks by signing Lenora's name. That year, Barbara entered into a lease with Osterkamp. The lease included Parcel 17. Barbara signed both Lenora's name and her own name on the lease agreement.

Lenora failed to make payments on the personal loan that was secured by the property that she had transferred out of the trust. The lender eventually foreclosed and took title to Parcel 17 and the Dahlia Lane residence. Lenora then moved in with Barbara and Barbara's husband.

Lenora died on March 26, 2002. After Lenora died, Barbara told Osterkamp to make his rent checks out to her as trustee.[6] Osterkamp's first rent check after Lenora's death was made payable to "Barbara Johnston—Trustee Arthur L. Gilbert Trust," and was dated March 27—the day after Lenora died. Osterkamp asked Barbara to show him the trust documents, and then asked her about Lloyd. Barbara told Osterkamp that she did not know where Lloyd was, and said she did not know how to get in touch with him.[7] Osterkamp continued to pay his rent to Barbara, as trustee, for a number of months. Barbara endorsed and deposited the checks, despite the fact that she had seen Lloyd at Lenora's funeral in late March 2002, and knew that he was the named successor trustee. Barbara claimed that she believed that Lloyd did not want to have anything to do with the trust because he had said, "[t]ake care of things or something along those lines" to her at the funeral.

In December 2002, an attorney for Lloyd wrote to Barbara and inquired about the trust property. Barbara did not respond to the letter. In May or June 2003, another attorney for Lloyd contacted Barbara. Barbara claimed at trial that she "had no information regarding the trust" to give to Lloyd's attorney at that time. On August 7, 2003, Lloyd recorded a document entitled "Affidavit of Succession Trustee." Barbara did not provide either Lloyd or Tammy with financial information about the trust.[8] Barbara testified that she had burned receipts and money orders that could have shown how she spent the rental income from Osterkamp after Lenora's death.

---

[6] Although Parcel 17 was no longer trust property, Parcel 21 remained trust property.

[7] Lloyd resided at the same address from the time of Arthur's probate proceedings to the time of trial.

[8] Even after this lawsuit was filed, Barbara produced no records relating to the trust in response to Tammy's discovery requests.

Tammy presented evidence that Lenora could have used her own personal property, namely Parcel 6, as security for the personal loan.[9] Barbara stood to inherit 100 percent of Lenora's personal property upon Lenora's death, but was to inherit only a 30 percent share of the trust property, which included Parcel 17. An expert appraised Parcel 17 to be worth $429,000 at the time of trial, but adjusted the value of the property to $423,000 to account for the estimated $6,000 that it would cost to address a drainage problem on the property.

## B. *Procedural background*

Tammy filed her original complaint against Barbara on November 14, 2006. In her complaint, Tammy alleged seven causes of action, which she identified as: (1) "Conspiracy to Breach Trust—Transfer of Lots 1-36 from the Trust Without Consideration"; (2) "Conspiracy to Breach Trust—Use of Trust Property for Personal Advantage"; (3) "Conspiracy to Breach Trust—Receipt of Trust Property in Violation of the Terms of the Trust"; (4) "Conspiracy to Breach Trust—Failure to Recover Trust Property"; (5) "Conspiracy to Breach Trust—Acting in the Place and Stead of Incapacitated Trustee"; (6) "Conspiracy to Breach Trust—Unduly Influencing Incapacitated Trustee"; and (7) "Accounting."[10] Barbara answered the complaint on January 24, 2007.

The court granted Tammy's request to file an amended complaint (FAC), which she filed on November 26, 2007. Tammy retained the same allegations as the original complaint in the FAC, and added two causes of action entitled "Breach of Trust" and "Bad Faith Breach of Trust." Tammy's allegations included the contention that "Barbara Johnston, acting for [her] own personal advantage, induced, aided and abetted the foregoing breach of trust [i.e., Lenora's taking of Parcel 17 and using it as security for a personal loan] all to plaintiff's damage in an amount to be proved at trial." Barbara answered the FAC on February 20, 2008.

Trial in the matter was set to begin on April 23, 2008. In the days just prior to trial, Tammy moved to file a second amended complaint (SAC). In the proposed SAC, Tammy sought to add Lloyd, as trustee, as a plaintiff in the

---

[9] Parcel 6 and Parcel 17 are approximately the same size and contain similar soil types. Together the parcels make up a 160-acre farm.

[10] Although Tammy titled her causes of action using the word "conspiracy," the allegations supporting the causes of action did not set forth the elements of civil conspiracy. However, as we explain further, Tammy was not required to establish the existence of a civil conspiracy in order to prevail against Barbara.

The trial court also recognized that although a number of Tammy's causes of action were labeled as claims of "conspiracy," those "labels are not exactly consonant with the facts pled in some of them."

action, as well as to clarify certain allegations in the FAC. Tammy submitted a declaration of Lloyd in which he stated, "I was reluctant to act as Trustee in support of Tammy King's allegations in this case until I had determined that her allegations against Barbara Johnston were substantial. I am now convinced that the allegations are substantial, and I have agreed to become a Plaintiff in this case with her."

After discussing the matter of adding Lloyd as a plaintiff in the case, and in response to Barbara's attorney's objection that discovery would have to be reopened if Lloyd were added as a plaintiff, the trial court gave Tammy the option of proceeding to trial without amending the complaint or postponing trial. Tammy's attorney indicated that Tammy wanted to go forward with trial, and the trial court denied the motion to file the SAC.

The court held a bench trial between April 25 and May 8, 2008. At the conclusion of trial, the court requested that the parties brief the issue of Tammy's standing to bring the action. The parties filed their briefs on this issue on May 16.

The trial court issued its tentative decision on August 14, 2008. The court organized its tentative decision around a number of questions that also served as topic headings. Specifically, the court asked, and then provided answers to, the following questions: (1) "Did defendant JOHNSTON conspire with Lenora Gilbert?"; (2) "Were the alleged breaches of trust of Lenora Gilbert the result of undue influence by defendant?"; (3) "Did defendant become the de-facto trustee?"; and (4) "Does plaintiff, as a trust beneficiary, have standing to bring the instant suit?" The court's final heading was not presented in the form of a question, but rather, as a statement: "Defendant's acts as trustee subsequent to the death of Lenora."

Among the trial court's conclusions was its determination that the evidence created "a strong inference that Lenora's actions were due to the undue influence of [Barbara]." The court found that the evidence demonstrated that (1) Lenora "was in failing physical and mental health at the [relevant] times"; (2) Lenora was "dependent on [Barbara] for assistance regarding financial matters and medical issues"; (3) Barbara "communicated with the title company and a lender regarding a loan transaction secured by trust property"; (4) Barbara "provided significant assistance to Lenora regarding personal banking"; (5) "[d]ocuments regarding transactions involving trust property were sent to [Barbara's] address"; and (6) Barbara "signed Lenora's name to transactional documents and checks." The trial court rejected Barbara's claims that she had not signed Lenora's name on documents and checks, and inferred from the lack of credibility of Barbara's testimony that Barbara had, in fact, been involved in Lenora's actions concerning trust property. The court

stated, "The fact that [Barbara] executed Lenora's signature was abundantly clear to the court sitting as trier of fact; [Barbara's] falsehoods in this regard were further confirmed by uncontradicted expert testimony."

The court ultimately concluded that Barbara had exercised undue influence over Lenora with regard to Lenora's breach of her duties as trustee, explaining: "Here, the evidence showed that Lenora took actions inconsistent with her duties as trustee (transferring property out of the trust without consideration) at a time when she was in failing physical and mental health; the evidence further shows that [Barbara] was involved in the transactions. Lenora was, to a great extent, dependent on [Barbara] to assist her with financial and other matters. This, coupled with [Barbara's] false and patently unreasonable denial of *any* involvement with Lenora's financial affairs compels the conclusion that [Barbara] did, in fact, exercise undue influence over Lenora."

However, the trial court rejected Tammy's theory that Barbara had acted in the capacity of trustee prior to Lenora's death. Although the trial court referred to the theory under which Tammy sought to hold Barbara liable as a trustee for her conduct prior to Lenora's death as one involving a "de facto trustee," and not, as Tammy had argued, a trustee *de son tort*, the court did refer in its discussion to the primary case on which Tammy had relied, and appeared to address Tammy's contention regarding the trustee *de son tort* theory. The court also concluded that Barbara had not conspired with Lenora because there was no evidence that the two had agreed to do anything.

The trial court concluded that Tammy did not have standing to bring the lawsuit without naming Lloyd as a defendant for his having failed to bring the lawsuit in the first place.

Finally, the court made the following determination: "The court finds that defendant acted as trustee subsequent to the death of Lenora and prior to the succession of Lloyd. During this time, defendant took possession of funds belonging to the trust (rental income); defendant has failed to account for these funds or their disposition. [¶] The evidence shows that the current trustee is actively recouping the funds from defendant by means of withholding distribution of trust income. This appears to be an eminently practical method for the recovery of trust property. The court declines to interfere with the non-party trustee's discretion in recovery of the funds."

The court indicated that its tentative decision was to grant judgment in favor of Barbara, and indicated that Barbara was to prepare a proposed statement of decision if one was requested.

On August 28, 2008, Tammy filed a request for a statement of decision. In her request, Tammy asked the court to clarify a number of matters related to

the issues that she has raised in this appeal, and specifically urged the court to consider case law that she had presented to the court, but to which the court had not referred in its tentative decision.

On September 23, 2008, Tammy filed a proposed statement of decision. In that document, Tammy specifically raised the issue of Barbara's participation in Lenora's breach of trust. In support of her proposed statement of decision, Tammy also filed three memoranda of points and authorities, each of which argued an independent theory as to why the court should hold Barbara liable—including the theories that Barbara was a trustee *de son tort*, and that Tammy has standing to bring a claim that Barbara was a third party participant in Lenora's breach. Tammy also filed a proposed judgment.

It appears that at some point Tammy moved to amend the operative complaint, after trial, to conform to proof. Although the motion is not in the record, the record contains Barbara's opposition to amending the complaint a third time, which was filed on September 30, 2008. That same day, the trial court filed an order adopting its tentative decision as its final statement of decision. The court rejected Tammy's request for a statement of decision, stating that Tammy's proposed statement of decision was "replete with argument and citations to case law, and appears to be merely a posttrial brief." The court also noted that Barbara's method for responding to Tammy's proposed statement of decision—which was to do nothing more than file a notice of lodgment of the court's tentative decision—was wholly inadequate. The trial court stated, "The parties have utterly failed to comply with the statutes and rules of court relating to the preparation of a statement of decision. This failure is so complete that the court cannot discern what controverted issues it is required to address. Therefore, the [c]ourt finds that the parties have waived any further statement of decision herein; the tentative ruling shall become the statement of decision of the court forthwith."

The court filed a judgment on November 3, 2008. Tammy filed a timely notice of appeal on November 21, 2008.

III.

DISCUSSION

Tammy contends on appeal that the trial court should have found Barbara liable for—at a minimum—the value of Tammy's portion of the value of Parcel 17, which was lost during Lenora's tenure as trustee. Tammy offers multiple theories as to how she, as a beneficiary, should have been permitted to recover from Barbara the value of Parcel 17. Tammy's first theory is that she has standing to sue and may recover from Barbara the value of Parcel 17,

which Lenora transferred to herself without consideration, because Barbara was a third party participant in Lenora's breach of trust. A second theory Tammy proposes is that the trial court should have determined that Barbara was a trustee *de son tort* of the trust, before and/or after Lenora's death. With respect to the time period during which Lenora was ostensibly the trustee, Tammy contends that Barbara "fully assumed the character and duties of the Trustee and managed the Trust estate as Trustee long before her mother died." According to Tammy, Barbara may be held liable as a trustee *de son tort* for allowing Parcel 17 to be removed from the trust without consideration and eventually foreclosed on. Further, according to Tammy, she, as a beneficiary, can maintain this action against Barbara and recover for the trust the value of Parcel 17 because a beneficiary may always sue a trustee—which Tammy asserts includes a trustee *de son tort*—for his or her breach of trust.

With respect to the time period after Lenora died and before Lloyd accepted his position as successor trustee, Tammy contends that even if Barbara did not become a trustee *de son tort* before Lenora's death, she clearly became one when, after Lenora's death, she held herself out as trustee and took control of trust property. Tammy asserts that Barbara is therefore liable for any breach of her trustee duties during this time, and that a trust beneficiary may sue her for any such breach.

■ We conclude that the trial court erred in determining that Tammy offered no theory pursuant to which she may recover from Barbara. Based on the trial court's findings of fact, Tammy could recover from Barbara under either a third party participant theory, or, possibly, under a theory that Barbara was a trustee *de son tort* after Lenora's death. The trial court clearly found that Barbara was significantly involved in (if not wholly responsible for) Lenora's breach of trust—i.e., the breach that resulted in the trust losing Parcel 17. Based on this finding, the trial court should have permitted Tammy to recover damages that the trust suffered under the third party participant theory. Further, the court should have determined whether, and if so, to what extent, Tammy may recover from Barbara under the theory that Barbara was a trustee *de son tort* for the trust property after Lenora's death.

A. *Tammy may recover from Barbara the value of property that Barbara helped Lenora to transfer out of the trust, under the theory that Barbara acted as a third party participant in the breach*

In the trial court's statement of decision, the court posed the question, "Does Plaintiff, as a Trust Beneficiary, Have Standing to Bring the Instant Suit?" The court's answer to this question was no. Citing *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419 [8 Cal.Rptr.2d 869], the trial court noted that "[n]ormally, the trustee is the real party in interest regarding claims

of the trust against third parties, and [the trustee] has the exclusive right to bring an action." The trial court did acknowledge the existence of an exception to that general rule, stating that a beneficiary may "bring an equitable action against the third party *and the trustee*," in situations "where the trustee *should* bring the action against a third party but refuses to do so." However, because Tammy had not named Lloyd as a defendant in the action, the court concluded that Tammy's action failed to meet the requirements of the exception that permits a beneficiary to sue a third party.[11] However, the trial court failed to recognize another exception to the general rule—one that applies here. Specifically, a beneficiary may pursue claims against a third party on his or her own, without participation by the trustee, when that third party actively participated in, or knowingly benefited from, a trustee's breach of trust.

██ "As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf. [Citations.] Conversely, a trust beneficiary cannot sue in the name of the trust. [Citations.]" (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 691 [87 Cal.Rptr.3d 122] (*Bowles*).) "But a trust beneficiary can bring a proceeding against a trustee for breach of trust. [Citations.]" (*Id.* at pp. 691–692.) "Moreover, it is well established, and this court has held, that a trust beneficiary can pursue a cause of action against a third party who actively participates in or knowingly benefits from a trustee's breach of trust. [Citations.]" (*Id.* at p. 692.)

"Ordinarily, when a third party acts to further his or her own economic interests by participating with a trustee in such a breach of trust, the beneficiary will bring suit against *both* the trustee and the third party. However, it is not necessary to join the trustee in the suit, because 'primarily it is the beneficiaries who are wronged and who are entitled to sue. . . .' [Citation.] The liability of the third party is to the beneficiaries, rather than to the trustee, 'and the right of the beneficiaries against the [third party] is a *direct right* and not one that is derivative through the trustee.' [Citation.]" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2008) 68 Cal.App.4th 445, 467 [80 Cal.Rptr.2d 329] (*Atascadero*); see also *Bowles, supra*, 169 Cal.App.4th at p. 694 ["[T]he beneficiary's cause of action is independent and not derivative through the trustee; therefore, the trustee is not a necessary party to the action. [Citations.]"].) Thus, " '[w]hen the claim being asserted rests in whole or in part on alleged breaches of trust by the

---

[11] The question of who is the proper plaintiff should, in most circumstances, be addressed much earlier in the proceedings, not after a full trial on the merits of an action. Barbara's only mention of the issue of standing during any of the pretrial proceedings came in the form of the following unexplained general assertion in her answer to the FAC: "PLAINTIFF LACK OF STANDING [*sic*]." Barbara simply never challenged Tammy's standing in any substantive way. As a result, the parties and the court invested significant time, energy and resources in a trial, when, if the trial court were correct in its ruling, all of this would have been wasted.

trustee, a beneficiary has standing to pursue such a claim against either (1) the trustee directly, (2) the trustee and third parties participating in or benefiting from his, her, or its breach of trust, or (3) such third parties alone.' " (*Bowles, supra*, 169 Cal.App.4th at p. 694, italics omitted, quoting *Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1341–1342 [2 Cal.Rptr.3d 798] & citing 60 Cal.Jur.3d (2005) Trusts, § 382, p. 527.)

Tammy alleged—and, according to the trial court's findings, established—that Barbara actively participated in Lenora's breaches of fiduciary duty, including the transfer of Parcel 17 to Lenora as an individual without consideration. Specifically, the court found that Barbara "was involved" in the transactions that resulted in Lenora "transferring property out of the trust without consideration[] at a time when [Lenora] was in failing physical and mental health," and that Barbara "exercise[d] undue influence over Lenora" with regard to these transactions. In a typical case, these facts would bring Tammy's claim against Barbara within the exception that a trust beneficiary may pursue a cause of action against a third party who actively participates in or knowingly benefits from a trustee's breach of trust.

However, we have not found any California authority that directly addresses the unique situation presented here—i.e., one in which a beneficiary brings a claim against a third party for her participation in a trustee's breach, despite the fact that a successor trustee has taken over the duties of the breaching trustee. Thus, it is an open question whether the appointment of a successor trustee extinguishes a beneficiary's ability to sue that third party for involvement in a prior trustee's breach of trust.

The authors of a well-known treatise on trusts appear to be of the view that a successor trustee's appointment might extinguish a beneficiary's right to sue a third party: "In such a case [where a trustee in breach of trust transfers trust property to someone who is not a bona fide purchaser and thereafter ceases to be trustee], *it would seem* that the beneficiaries cannot maintain a suit against the transferee unless the successor trustee refuses to sue or is unavailable." (5 Scott & Ascher on Trusts (5th ed. 2008) § 29.1.11.4, p. 1999, italics added.) However, Scott and Ascher cite no authority to support their conclusion that a beneficiary may not maintain an action in a situation in which a successor trustee has been appointed.[12] Nor do they offer any reason why "it would seem" that such a rule is appropriate.

---

[12] In relation to this principle, the authors do offer citations to two California cases, *Atascadero, supra*, 68 Cal.App.4th at page 467, and *Wolf v. Mitchell* (1999) 76 Cal.App.4th 1030, 1041 [90 Cal.Rptr.2d 792] (*Wolf*). However, Scott and Ascher do not cite these cases as authority for the proposition in question; rather, they simply note that these cases "cit[e] the text" of their work with regard to this principle. (5 Scott & Ascher on Trusts, *supra*, § 29.1.11.4, p. 1999, fn. 2.) Although both the *Atascadero* and *Wolf* courts referred to a prior edition of the text (i.e., 4 Scott on Trusts (4th ed. 1989) § 294.4, pp. 104–105) and cited the

In contrast to *Scott* and *Ascher's* position on this issue, the court in *Bowles* implicitly determined that a beneficiary may bring a claim against a third party who participated in a trustee's breach of trust, despite the appointment of a successor trustee. In *Bowles*, the plaintiff beneficiary sued two defendants, alleging that Ms. Bowles, the trustee, had breached her fiduciary duties as trustee, and that the two defendants had induced, aided and abetted Ms. Bowles's breaches with the knowledge that the transactions breached Ms. Bowles's duties as trustee. (*Bowles, supra,* 169 Cal.App.4th at p. 691.) By the time the plaintiff filed the action, Ms. Bowles had died and a bank had been appointed successor trustee. (*Id.* at p. 689.) Although the *Bowles* court did not specifically address the issue of the existence of a successor trustee and/or the effect of the appointment of a successor trustee on the beneficiary's claims, the court concluded that the plaintiff had standing to bring the action against the third parties in that situation.

█ We affirmatively state here what the *Bowles* court implicitly concluded—i.e., that the naming of a successor trustee does not prevent a beneficiary from proceeding on a claim against a third party who participated in and/or benefited from a predecessor trustee's breach of trust. If it is true that " 'the right of the beneficiaries against the [third party] is a *direct right* and not one that is derivative through the trustee . . . ' [citation]" (*Atascadero, supra,* 68 Cal.App.4th at p. 467), we see no reason why an independent claim that exists prior to the appointment of a successor trustee should be extinguished upon that appointment, and Barbara has offered no reason why the appointment of a successor trustee should serve to wipe out a beneficiary's "direct right" against a third party. We therefore conclude that a beneficiary, like Tammy, may maintain an action against and recover from a third party who has assisted a former trustee in committing a breach of trust, even where a successor trustee has been appointed.

---

text with regard to this rule, in neither of these cases was the court required to adopt or reject the rule. As the *Wolf* court explained: "In *Atascadero* the Court of Appeal considered a passage of Scott on Trusts which notes that a beneficiary should not be allowed to maintain an action against a third party that actively participates in a breach of trust if the offending trustee has been removed and a successor appointed. (*Atascadero, supra,* 68 Cal.App.4th at p. 467, citing 4 Scott on Trusts, *supra,* § 294.4, pp. 104–105.) The court had no occasion to apply this rule in *Atascadero* because the county remained the trustee of the [statutory investment trust] both during and after the breaches of fiduciary duty, even though the occupant of the county treasurer position had changed. (68 Cal.App.4th at pp. 468–470.) We also have no occasion to consider whether the rule suggested by this passage of Scott on Trusts should be applied in an appropriate case. Here a current cotrustee (Fred) is alleged to have actively participated with the prior trustee (David) in the breaches of trust alleged in the complaint. Indeed, he is alleged to have been the primary recipient of the funds dissipated from the trust. Under these circumstances, '. . . it is unnecessary for the beneficiar[y] to call on [the current trustee] to undo what he has done.' (4 Scott on Trusts, *supra,* § 294.1 at p. 100.)" (*Wolf, supra,* 76 Cal.App.4th at p. 1041.)

Barbara contends on appeal that "[w]ithout a conspiracy[,] Tammy King [cannot] jump over the Trustee and sue Barbara Johnston." She asserts that in *Bowles* and in *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093 [3 Cal.Rptr.2d 236], "there was sufficient evidence produced at trial that the third party actively participated in a conspiracy to breach the trust." Barbara further contends that in these cases, "[t]here were conspiracies," but that in the present case, the trial court ruled that "there was no conspiracy between Barbara Johnston and Lenora." Barbara misconstrues the scope of *Bowles* and *Pierce*. Neither case involved a conspiracy, and neither case suggests that evidence of a conspiracy is required in order to hold a third party liable for participating in or benefiting from a trustee's breach of trust. Rather, *Bowles* and *Pierce* involved situations strikingly similar to the one here. Thus, although the trial court in this case determined that Tammy had not proved the existence of an actual conspiracy between Lenora and Barbara, this is of no consequence to Tammy's standing to bring a claim against Barbara for Barbara's role as a third party participant in Lenora's breach of trust.

Because the trial court concluded that Tammy did not have standing to bring claims against Barbara, the court did not make the necessary determinations with respect to Barbara's liability for her role as a third party participant in Lenora's breach of trust. For example, the court did not make a finding as to the amount of the loss that the trust suffered as a result of Lenora's breach of trust. We must therefore remand the case to the trial court for it to determine the relief available to Tammy.[13]

As a final note, in determining that Tammy has standing to recover from Barbara under a theory that Barbara was an active third party participant in Lenora's breach, we must necessarily uphold the trial court's conclusion that Tammy may not at the same time prevail on her theory that Barbara should be liable as a trustee *de son tort* for that same conduct, i.e., her conduct before Lenora's death. Barbara was either a third party participant in a trustee's breach of trust, or she was a trustee *de son tort*; she cannot have been both a third party and a trustee at the same time. Since there is substantial evidence to support the trial court's findings that Barbara did not " 'assume[] the role of trustee' " during Lenora's lifetime, and that Barbara unduly influenced Lenora and was involved in the transactions that amounted

---

[13] Although Tammy is suing as a beneficiary of the trust, her recovery may be directed to the trustee: "When the beneficiaries are successful in a suit against a transferee of trust property, the court ordinarily orders the defendant to pay the trustee." (5 Scott & Ascher on Trusts, *supra*, § 29.1.11.2, p. 1996.) Although Barbara may not have been the "transferee of trust property," the same concepts apply to her as a third party participant. (See *Wolf, supra*, 76 Cal.App.4th at pp. 1039–1041 [referring to and relying on similar authority regarding "transferees of trust property" in suit against a third party who participated in breaches other than the transfer of property to the third party].) Tammy thus may recover from Barbara the value of the lost property that is required to make the trust—and not only Tammy—whole.

to a breach, we reject Tammy's trustee *de son tort* theory of liability for Barbara's conduct prior to Lenora's death.

B. *Tammy may recover from Barbara for Barbara's breach of trust after Lenora's death*

In the alternative, Tammy could possibly recover the value of Parcel 17 for the trust under the theory that Barbara failed to meet her duties as a trustee (a trustee *de son tort*) after Lenora died. Although Tammy requested in her proposed statement of decision that the trial court address this issue, the trial court limited its consideration of Barbara's liability for her conduct after Lenora's death to Barbara's failure to account for rental income that belonged to the trust. The trial court failed to address Tammy's contention that Barbara should be held responsible for not seeking to redress the loss of trust property once Barbara held herself out as trustee after Lenora's death. Because Tammy brought to the trial court's attention the court's failure to consider Barbara's liability as a trustee *de son tort* after Lenora's death, we cannot infer from the court's failure to address these issues that the court resolved these issues against Tammy.[14] (See, e.g., *Gallo Cattle Co. v. Kawamura* (2008) 159 Cal.App.4th 948, 964, fn. 11 [72 Cal.Rptr.3d 1] ["The trial court is required upon appropriate request to issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues. [Citation.] If the trial court fails to resolve a controverted issue and the record shows that the omission or ambiguity was properly brought to the attention of the trial court, the appellate court may not draw factual inferences in support of the judgment. [Citation.]"].)

 The trial court should have addressed whether Barbara could be held liable as a trustee *de son tort* for her failure to protect and/or recover Parcel 17 or its value after Lenora's death.[15] The fifth edition of Black's Law

---

[14] Tammy clearly brought these undetermined issues to the trial court's attention. She asked the court to clarify its finding that Barbara " 'acted as trustee subsequent to the death of Lenora and prior to the succession of Lloyd,' " and specifically asked the court whether Barbara had become a trustee *de son tort* and whether Barbara had, in this capacity, breached her duties to the beneficiaries. However, the trial court did not address Tammy's concerns, instead concluding that both parties "failed to comply with the statutes and rules of court relating to the preparation of a statement of decision," and declaring that the "failure [wa]s so complete that the court cannot discern what controverted issues it is required to address." The trial court improperly rejected Tammy's proposed statement of decision in its entirety on the ground that it included some legal analysis with which the court did not agree. Tammy presented a host of issues that remained unresolved. The trial court's ruling could have benefited from consideration of these matters.

[15] Tammy contends that the trial court did not properly consider whether Barbara was a trustee *de son tort* because the court instead addressed whether Barbara was a de facto trustee. Although the trial court may have used the term "de facto trustee" rather than "trustee *de son tort*" to describe Tammy's theory of Barbara's liability, the court nevertheless determined that,

Dictionary defined a trustee *de son tort* as a "[p]erson who is treated as a trustee because of his wrongdoing with respect to property entrusted to him or over which he exercised authority which he lacked." (Black's Law Dict., *supra*, p. 1357, col. 2.)[16] In *England v. Winslow* (1925) 196 Cal. 260 [237 P. 542] (*England*), the Supreme Court explained the common law theory of imposing fiduciary duties on a person who acts as if he or she is a trustee by taking control of trust property, despite lacking the authority to do so. In *England*, the plaintiff was executrix of Sophia Winslow's estate, and the defendant was Sophia Winslow's husband at the time of her death. (*Id.* at p. 263.) After Winslow's death, the defendant collected the rents from occupants of a building that had been Winslow's separate property. (*Ibid.*) The plaintiff sought an accounting and the payment of all of the money that the defendant had collected from those tenants. (*Id.* at p. 264.) The court determined that the defendant had essentially become the trustee of those funds by virtue of acting as trustee, by taking control of and managing estate assets. (*Id.* at p. 267.)[17]

The *England* court explained, "One who has assumed the relation and undertaken to act in the capacity of a trustee and who has thereby come into the possession and control of the money or property of another cannot be heard to deny the validity of the trust under which he has admittedly acted and the benefits of which he has received and holds. [Citation.] . . . [A] person may become a trustee by construction by intermeddling with and assuming the management of property without authority, and . . . during the possession and management thereof by such constructive trustees they are subject to the same rules and remedies as other trustees, and cannot avoid their liability as such by showing that they were not in fact trustees, nor can they set up the statute of limitations." (*England, supra*, 196 Cal. at p. 267.) The court further described the basis for the doctrine, as follows: " 'It is a well settled rule in the law of trusts that if a person not being in fact a trustee acts as such by mistake or intentionally, he thereby becomes a trustee *de son tort*. The rule is thus laid down by a recent writer: "A person may become a trustee by construction, by intermeddling with and assuming the management

---

*at least during the time that Lenora was alive*, Barbara did not assume the role of de facto trustee *or* trustee *de son tort*. However, the trial court made no findings with regard to whether Barbara could be liable as a trustee *de son tort* for her actions *after* Lenora's death, despite the fact that the trial court determined that Barbara "acted as trustee" at that point in time.

[16] Black's Law Dictionary has more recently altered its definition of trustee *de son tort* to the following: "A person who, without legal authority, administers a living person's property to the detriment of the property owner." (Black's Law Dict. (8th ed. 2004) p. 1554, col. 1.)

[17] The *England* court also found that the defendant had an agreement with the plaintiff in which he agreed to act in the capacity of trustee for the benefit of the estate, and that under this agreement, he was holding in trust for the estate all of the money he collected. (*England, supra*, 196 Cal. at pp. 265–267.) However, the court concluded that an alternative ground for imposing liability on the defendant with respect to the property belonging to the estate was that he was a trustee *de son tort* of the property. (*Id.* at pp. 267–268.)

of property without authority. Such persons are trustees *de son tort* [just] as persons who assume to deal with a deceased person's estate without authority are administrators *de son tort* . . . [.] During the possession and management by such constructive trustees they are subject to the same rules and remedies as other trustees." [Citations.] . . . It is plain that this branch of the law does not rest on the strict ground of estoppel as usually expounded in the law books. It rather depends upon a principle of public policy connected with the right administration of justice. [Citation.] The principle to be extracted from the cases is that the party acting as trustee shall not be allowed, in a court of justice, to set up, as against parties interested in the administration of the trust, a state of things inconsistent with his assumed character.' " (*England, supra,* 196 Cal. at pp. 267–268.)

Although *England* is not recent authority, it appears to still be valid, and the equitable principles on which the notion of a trustee *de son tort* is based remain relevant today. The facts in this case seem to fit precisely with the notion espoused in *England* that one should not be permitted to assume the character of a trustee and wrongfully benefit from doing so without also having to assume the responsibilities of a trustee. There is evidence that Barbara held herself out as the trustee to Osterkamp, and that she went so far as to tell Osterkamp that she did not know where Lloyd was and that she could not get in touch with him. As the trial court apparently found, Barbara assumed management of the trust rental income by accepting the rental income in her name, as trustee. Barbara was seemingly the only person who took control of the trust assets after her mother died. The trial court specifically concluded that Barbara "acted as trustee" and that she "took possession of funds belonging to the trust" during the period of time after Lenora's death and before Lloyd accepted his position as trustee. However, the trial court did not address whether Barbara's conduct was such that she should be held to the same standards as a named trustee would be held. There were clearly sufficient facts to support a finding that Barbara wrongfully took over some or all of the trust property after her mother died. The trial court will have to determine on remand whether Barbara's conduct was sufficient to hold her liable as a trustee *de son tort* of some or all of the trust property and, if so, whether she breached her duties in that role, and what relief would be appropriate if the court finds that such a breach occurred.[18]

Barbara does not offer any reason why she may not be held liable for her conduct after Lenora's death. She simply ignores the contention that she

---

[18] It is possible that the trial court will conclude that Barbara should not be held liable as a trustee *de son tort* for certain breaches for which an express trustee might be liable, since, unlike a situation involving an appointed trustee who necessarily has a relationship to all of the trust property, a court imposes trustee *de son tort* liability with respect to an individual's conduct in relation some particular item or property. This particular item or property might not be coextensive with the trust property as a whole.

assumed the role of trustee after Lenora's death, instead focusing all of her attention on, and citing the trial court's findings only with regard to, the time period *before* Lenora died. Barbara also incorrectly asserts that Tammy did not raise the trustee *de son tort* theory in the trial court. However, it is clear that Tammy did, in fact, raise this issue in the trial court.

Thus, the trial court should have addressed whether Barbara breached her duties as a trustee *de son tort* in the manner in which she managed the trust assets and/or in failing to provide an accounting of the trust assets and/or in failing to seek to recover property that the trust had lost as a result of Lenora's breach of trust. On remand, the trial court should consider the extent to which Barbara may have owed fiduciary duties to the beneficiaries, and whether Barbara fulfilled, or instead, breached, any such fiduciary duties when she "acted as trustee" after Lenora's death and prior to Lloyd's succession as trustee.

### C. *The trial court should determine the relief to be awarded*

Tammy asserts that she may recover various forms of relief, depending on the theory of liability under which she prevails. For example, Tammy contends that Barbara should be held liable for Tammy's portion of the value of Parcel 17 for Barbara's role as a third party who actively participated in Lenora's breach. Tammy contends that if Barbara is liable as a trustee *de son tort* for her actions while Lenora was still alive, then Barbara "is responsible to make the Trust whole for the damages she caused to it," which, Tammy contends, would "include the value of Parcel 17 at the date of trial." Tammy then suggests that if Barbara is held liable as a trustee *de son tort* for her actions after Lenora's death, Barbara should be "responsible for damages in the amount of the current value of Parcel 17, in order to make the trust whole, because she deprived the Trustee and Tammy of the opportunity to sue Lenora's estate for the value of Parcel 17." Alternatively, Tammy argues that, "the court may declare Barbara's beneficial interest in Parcel 6 to be held by Barbara as constructive trustee for the benefit of the Trust."

Tammy also asserts that under any theory, Barbara should be responsible "for the amount that the attorney's fees and costs of this litigation exceeded Tammy's share of the attorney's fees and costs that Lloyd, as successor Trustee, would have incurred by a timely action against Lenora's estate." Tammy also claims that Barbara should be liable for "double damages under Probate Code § 859," and asks this court to impose such damages, or to direct the trial court to do so.

We decline to address any of Tammy's arguments concerning her requests for particular relief, for a number of reasons. First, the trial court made no

findings with regard to damages because the court determined that Tammy did not have standing to sue Barbara, and because the court made no determination as to whether Barbara might be liable as a trustee *de son tort* for her conduct after Lenora's death. In the absence of any findings by the trial court with regard to damages and/or equitable relief, we decline to comment on what relief may or may not be appropriate and/or available to Tammy.

Second, other than with respect to Tammy's argument asserting that she should be awarded excess attorney fees as damages, Tammy provides no reasoned argument or authority on appeal to support her assertions with regard to any of the relief to which she claims she is entitled.[19] Third (and perhaps as a consequence of our second reason for declining to address possible relief), we are not convinced that Tammy would necessarily be entitled to recover different amounts under the various alternative theories that she presents. Rather, it appears that the essence of Tammy's complaints against Barbara revolve around the loss of Parcel 17. Regardless of how that loss may be remedied, and whether it be under a theory of third party participant liability, or liability as a trustee *de son tort*, it would appear that the available relief would be similar, if not the same.[20] For example, Tammy proposes that she may recover double damages under Probate Code section 859 under any theory of liability. We leave to the trial court the determination as to the appropriate relief in these circumstances.

## IV.

## DISPOSITION

The judgment of the trial court is reversed. The case is remanded to the trial court with the following directions:

(1) the trial court shall consider the evidence presented at trial and determine whether Tammy has prevailed on her claim that Barbara is liable as a trustee for breaches of trust owed to the beneficiaries after Lenora's death under a trustee *de son tort* theory;

---

[19] Although Tammy does present a reasoned argument in support of her contention that she is entitled to an award of excess attorney fees that she would not have incurred if a proceeding to recover Parcel 17 or its value had been timely filed against Lenora's estate, it does not appear that Tammy made this argument in the trial court or that she presented any evidence as to how the court could determine such damages.

[20] Again, the court may direct that damages sought by a beneficiary be paid to the trustee. Thus, there is no reason to limit a beneficiary's recovery on behalf of the trust to only that amount to which that beneficiary is independently entitled.

(2) the trial court shall find in favor of Tammy on her claim against Barbara for Barbara's actions as a third party who actively participated in Lenora's breach of trust; and

(3) after resolving the remaining issues of liability, the trial court shall determine the amount of nonduplicative damages Barbara is to pay to reimburse the trust, under either or both theories of liability (depending on the court's determination of liability under the trustee *de son tort* theory), and/or whether relief apart from money damages would be appropriate under the circumstances.

The trial court may conduct any further proceedings that may be necessary in light of the trial court's judgment.

Tammy is awarded costs on appeal.

McConnell, P. J., and O'Rourke, J., concurred.