Filed 8/19/15  Wells Fargo Bank v. Cornell CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| WELLS FARGO BANK N.A., as Executor, etc.,<br><br>    Respondent,<br><br>        v.<br><br>JANET CORNELL,<br><br>    Appellant;<br><br>WELLS FARGO BANK, N.A. as Trustee, etc.,<br><br>    Real Party in Interest and Respondent. | G049748<br><br>(Super. Ct. No. 30-2009-00295093)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Law Office of John Devine and John Devine for Appellant.

Jeffer Mangels Butler & Mitchell, Neil C. Erickson and Susan Allison for Real Party in Interest and Respondent.

*        *        *

This is the companion appeal to case No. G049747, and is based on the same underlying facts and addresses many of the same issues. In the interests of brevity, we shall not repeat the facts or address the issues where the two cases are identical.

That leaves only a few issues for this appeal, which relate to the petition filed by Janet Cornell (Janet) [1] for approval of a trust accounting of the trust we referred to in the companion case as Trust A.[2] The trial court denied Janet's petition and surcharged her for approximately $1.2 million, the details of which we shall discuss below. The court ordered to pay these amounts to Wells Fargo Bank, NA (Wells Fargo), the current trustee of Trust A. Janet argues she was never trustee of Trust A and the surcharges were improperly imposed. We disagree and therefore affirm the judgment.

I

FACTS

We refer the reader to the statement of facts in the companion case.[3] We shall add additional facts as relevant in our discussion.

---

[1] We refer to the parties by their first names for the ease of the reader. No disrespect is intended. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

[2] Also discussed more fully in the companion case are the various trusts that comprise the Cornell estate, including the Community Property Trust. Trust A was Clark's separate property. Trust "B" (Trust B) was a marital trust from Clark's first marriage and also his separate property.

[3] As we mentioned in the companion case, Janet's briefs are poorly organized, mixing factual recitations and legal arguments, and thereby making it difficult to separate and sort out her legal claims. We have done our best to do so and deem any remaining point waived due to inadequate briefing. (*Akins v. State of California* (1998) 61 Cal.App.4th 1, 17, fn. 9.) She also raises several points in her reply brief which she neglects to discuss or mention at all in her opening brief. Any such arguments are deemed waived. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108.)

## II

## DISCUSSION

The same standard of review that applied in the companion case also applies here. For the same reasons we discussed in the companion case, we reject Janet's contentions that the guardian ad litem was improperly appointed and lacked standing. We also find Janet's contentions regarding her breach of fiduciary duties to be without merit, under the same reasoning applied in the companion case.

We also reject Janet's claim that Clark should be presumed competent after January 1, 2006. As we note in the companion case, there was more than substantial evidence to support Clark's incompetency after that date. Despite Janet's claims to the contrary, Probate Code section 2582, et seq. has no relevance here. This statute is pertinent only when a conservator files a case seeking to take specific actions for reasons set forth in the statute. It is simply irrelevant here, despite Janet's tortured attempts to fit a square peg into a round hole.

That leaves us with the issues surrounding Trust A. The trial court concluded that Janet was "acting as trustee of Trust A, or as a trustee *de son tort*, from January 1, 2006 to the present . . . ." A trustee *de son tort* is "'A person who, without legal authority, administers a living person's property to the detriment of the property owner.' [Citation.]" (*King v. Johnston* (2009) 178 Cal.App.4th 1488, 1505, fn. 16.) Janet argues she was not a trustee *de son tort* because she "did not hold herself out as a trustee of Trust A." She claims there was no evidence that she caused any funds to be misdirected into the Community Property Trust rather than Trust A. She asserts that "with regard to the inflows into the Community Property Trust, JANET and CLARK acted the same after January 1, 2006 as JANET and CLARK had acted prior to January 1, 2006."

Clark, however, had no legal ability to act after January 1, 2006. Janet also admitted in the companion case that after March 2007, she began acting as sole trustee of

3

the Community Property Trust. Janet's assertions also fail to help her legally because only Clark had the authority to transmute separate property, including Trust A, into community property. Janet also testified to various other facts, including that Clark had not paid bills or conducted financial business since the end of 2003 , and she was writing multiple checks from Trust A in and after 2006, which Clark merely signed. Most notably, between 2005 and 2008, a period where Janet was writing all of the checks, nearly all the cash in Trust A, Clark's separate property, was disbursed. Taken together, these facts amply justify a finding that Janet was acting as trustee *de son tort* of Trust A from 2006 until Wells Fargo took over in 2010.

Janet also argues with some of the surcharges imposed by the court. First, the trial court concluded that Clark's separate income from a rental property known as the Walker Property should have been deposited into Trust A. Instead, it was deposited into the Community Property Trust. The amount of this surcharge was $585,693. Janet does not dispute that she did this, but argues that Clark had previously deposited these funds into the Community Property Trust and she did the same. But she also testified she knew the Walker Property income was Clark's separate property. Accordingly, under the terms of the separate property agreement she and Clark signed in 1998, only Clark could, in writing, change his separate property to community property. Janet was aware of this. The court, therefore, properly surcharged Janet the income from the Walker Property.

The court also surcharged Janet $143,982 for a tax overpayment by Trust A. Janet claims there was no evidence who indicate to made these payments. Someone, however, must have, and the only pertinent candidates are Janet and Clark. Janet testified that Clark did not conduct financial business or pay bills after the end of 2003, and Clark could not decipher invoices, write checks, fill out paperwork, or look up information in 2006 – Janet had been doing so for two years by then. The court had sufficient evidence from which to conclude that Janet was responsible for the overpayment.

4

Janet was also surcharged $428,643 for Trust B income that was deposited into the Community Property Trust, but should have been deposited into Trust A, Clark's separate property, instead. Janet claims she never made any instruction to have these funds so directed. But again, this income was indisputably Clark's separate property, and without a writing from Clark before January 1, 2006, stating the funds should be transmuted, they were required to be deposited into Trust A. The trial court did not err by directing this surcharge against Janet.

## III

## DISPOSITION

The judgment is affirmed. Wells Fargo is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.